IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| ANTHONY & JUDITH ARCHER, ) | CASE NO. BK05-85920 |
| ) | |
| Debtor(s). ) | CH. 13 |

## ORDER

Hearing was held in Omaha, Nebraska, on July 16, 2007, on the debtors' motion to borrow and for approval of plan pre-payment (Fil. #42) and objection by the Chapter 13 trustee (Fil. #47). Todd Mulliner appeared for the debtors, and Thomas Kenny appeared for the trustee.

The debtors filed their Chapter 13 petition in December 2005. Their plan was confirmed in April 2006. It proposed monthly payments of $300 over 60 months,[1] for a total of $18,000. Their secured claims consist of a first and second mortgage and two car payments. The car payments and attorneys' fees will be paid through the plan, and unsecured creditors will receive a pro rata distribution.

The debtors now have an opportunity to refinance their home, and would like to pay off the base amount of the plan with a lump-sum payment to the trustee. The trustee objects, arguing that 11 U.S.C. § 1325(b) requires debtors to devote all of their projected disposable income to be received during the applicable commitment period ("ACP") to the plan for payment to unsecured creditors.[2] The ACP is defined as three years, or not less than five years if the debtors meet certain income guidelines. Section 1325(b)(4). The trustee's position is that the Bankruptcy Code imposes a temporal,[3] rather than a monetary, requirement on the plan's duration, which means the debtors must make payments for the stated time period regardless of their ability to make the total plan payments in less time.[4]

---

[1] The debtors have above-median income.

[2] The ACP and "projected disposable income" terminology was added to § 1325 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

[3] The "temporal" and "monetary" terms used herein are the "shorthand" references generally used in the case law. The focus of the arguments concerning ACP is whether ACP measures the length of time that must pass (often referred to as the temporal argument) or whether it measures the value of the payments creditors must receive through the plan (often referred to as the monetary argument).

[4] The issue would become moot if the plan were to pay 100 percent to unsecured creditors, as an ACP may be for less than three years or five years if the plan provides for payment in full of all allowed unsecured claims over a shorter period. § 1325(b)(4)(B).

The debtors argue that § 1329, which provides for post-confirmation plan modification, does not incorporate the ACP portion of § 1325, so Congress must have intended to permit debtors who experience a change in circumstances to modify their plans regardless of the initial ACP. This argument was successfully made in *In re Ewers*, ___ B.R. ___, 2007 WL 1066767 (Bankr. D. Nev. Feb. 26, 2007), where debtors who had confirmed a five-year plan retired thereafter and moved to modify their plan to a three-year term with lower payments based on their reduced income. The trustee objected, arguing that (1) ACP is a temporal requirement that cannot be modified without full payment to unsecured creditors, (2) it is based on "current monthly income" which does not consider post-petition income, and (3) § 1329 does not say that it can be modified. The court relied on a plain reading of the two statutory sections in light of the pre-BAPCPA decision of *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768 (B.A.P. 9th Cir. 2005). In *Sunahara*, the debtor requested permission to refinance his real estate, pay off his plan early, and receive an immediate discharge. The trustee objected, and the parties disputed whether the 36-month requirement measures the length of time that must pass or the value of the payments which creditors must receive. The panel held that because § 1329(b) specifically includes § 1325(a), it necessarily excludes § 1325(b) and therefore the disposable income requirement does not apply. Thus, according to *Sunahara,* a proposed plan modification that reduced the term to less than three years without full payment of unsecured claims could be approved if it was proposed in good faith.

The *Ewers* court followed the reasoning of *Sunahara*. *Ewers* stated that "the plain meaning of [§ 1325(b) and § 1329(a)(2)] achieves a harmonious statutory scheme" in laying out certain requirements for plan confirmation and lesser requirements for plan modification. 2007 WL 1066767 at *2. The court also rejected the trustee's argument that reduced post-petition income is not relevant to plan modification, explaining that if such an analysis were appropriate, no above-median debtor could ever modify a plan to shorten its term. Such a holding would eviscerate the congressional intent that debtors be allowed to modify their plans when their circumstances change. *Id.* at *3.

Bankruptcy cases addressing the issue have done so in the context of plan confirmation, rather than modification, and have come down on both sides of the question. *See, e.g.*, *In re McGillis*, ___ B.R. ___, 2007 WL 1549071 (Bankr. W.D. Mich. May 15, 2007) (giving the phrase a temporal meaning would undermine the court's interpretation of "disposable income"; also noting that a debtor could propose to modify his plan post-confirmation to reduce distribution to unsecured creditors because § 1329(b) includes no reference to § 1325(b)); *In re Mullen*, ___ B.R. ___, 2007 WL 1452234 (Bankr. D. Or. May 14, 2007) (if ACP is merely a multiplier, debtors would be locked into disposable income as calculated at the time of confirmation and there would be no basis to permit post-confirmation modifications based on changes in income); *In re Mathis*, ___ B.R. ___, 2007 WL 1320740 (Bankr. N.D. Ill. May 4, 2007) (debtors had no projected disposable income to pay to unsecureds, so keeping case open after all plan payments have been made would simply delay the "fresh start"); *In re Swan*, ___ B.R. ___, 2007 WL 1146485 (Bankr. N.D. Cal. Apr. 18, 2007) (it makes little sense to hold debtor hostage for 60 months if he can satisfy the requirements of § 1325(b)(1)(B) in a shorter time); *In re Beckerle*, ___ B.R. ___, 2007 WL 1111264 (Bankr. D. Kan. Apr. 13, 2007) (plain language requires a minimum number of years for debtors to commit projected disposable income); *In re Grant*, 364 B.R. 656 (Bankr. E.D. Tenn. 2007) (had Congress intended

to signify a multiplicand rather than a temporal period, it could have done so); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007) (ACP solely temporal; treating it as a multiplier would negate much of § 1329's usefulness; essence of Ch. 13 is debtor's commitment to repay creditors over a period of time, signifying an on-going obligation for the length of the plan term); *In re Girodes*, 350 B.R. 31 (Bankr. M.D.N.C. 2006) (plain meaning supports temporal interpretation; for post-confirmation plan modification section to have meaning, parties must have the right to request modification for the full life of the plan); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006) (ACP is a temporal requirement; a monetary interpretation would render § 1325(b)(4)(B) meaningless).

A case from the Western District of Missouri bankruptcy court theorized that interpreting ACP as a temporal requirement would comport with pre-BAPCPA practice:

> [A]s a practical matter, a monetary interpretation of ACP represents a gross departure from pre-BAPCPA practice that is not justified by the language or structure of the statute. Prior to BAPCPA's enactment, debtors could not exit chapter 13 in less than three years without paying in full the allowed unsecured claims. BAPCPA's revision of § 1325, albeit significant, has not changed this tenet of pre-BAPCPA practice. Quite simply, the plain language of § 1325 dealing with applicable commitment period indicates that plan duration is still determined by temporal, not monetary, requirements. And the Court declines to abandon the temporal framework for determining plan duration without clear instructions from Congress to do so.

*In re Schanuth*, 342 B.R. 601, 608 (Bankr. W.D. Mo. 2006) (footnote omitted).

*Schanuth* and the cases cited above dealt with ACP in the confirmation process, where the issue was the length of the initial plan term. For confirmation purposes, it seems clear from the statutory language that ACP must be a term of years. However, the same considerations are not necessarily present in the modification process. A proposal to alter the amounts of payments or, as here, the time for payments need not take into account a historical calculation of disposable income, which is what § 1325(b) encompasses. *See* 8 *Collier on Bankruptcy* ¶ 1329.05 (Alan N. Resnick et al. eds., 15th ed. rev.) ("[S]ection 1325(b) is not one of the provisions incorporated in section 1329(b), and could not be in light of the amendment to 1325(b) which requires the use of the debtor's prepetition income amounts to determine plan payments.").

The Northern District of Illinois bankruptcy court noted in *Mathis*, cited above, that nothing in the Bankruptcy Code limits debtors' ability to pre-pay their plan payments, such as by selling or refinancing their home. *Mathis*, 2007 WL 1320740 at *6 (citing pre-BAPCPA case law: *Mangum v. Marshall (In re Mangum)*, 343 B.R. 185, 189 (Bankr. N.D. Ill. 2006) (§ 1325(b)(1)(B) "simply provides one test for determining the minimum amount that a debtor must propose to pay to creditors" to obtain confirmation of a less-than-full-pay plan); *Sunahara*, 326 B.R. at 782; *In re Forte*, 341 B.R. 859 (Bankr. N.D. Ill. 2005); *Miller v. Loan Star Mortgage, Inc. (In re Miller)*, 325 B.R. 539, 542 (Bankr. W.D. Penn .2005); *In re Richardson*, 283 B.R. 783, 801-02 (Bankr. D. Kan. 2002)).

   In a case such as this, the confirmation requirements have already been met. The only change now appears to be the debtors' desire to make a lump-sum payment of the balance due under the plan to be done with it. There is no indication of bad faith on the part of the debtors. In fact, the debtors are refinancing because their existing variable rate loan has caused their home mortgage payment to increase by $226 during this bankruptcy. There appears to be no good reason to defer ready payments simply to stretch the case out for another three years to its original completion date. Cash in hand is always worth more than the promise of future payments, and there is no evidence that anyone will be harmed by an early completion of the plan. Therefore, the trustee's objection to the debtors' motion will be overruled.

   IT IS ORDERED that the objection by the Chapter 13 trustee (Fil. #47) to the debtors' motion to borrow and for approval of plan pre-payment (Fil. #42) is overruled.

   DATED: July 20, 2007.

                         BY THE COURT:

                          /s/ *Thomas L. Saladino*
                          United States Bankruptcy Judge

Notice given by the Court to:
  *Todd Mulliner
  Tom Kenny
  United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.